**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | Case No.: 16-47428-659 |
| | ) | Honorable Kathy A. Surratt-States |
| **DIRECTORY DISTRIBUTING** | ) | Chapter 11 Proceeding |
| **ASSOCIATES, INC. ,** | ) | |
| | ) | Hearing Date: December 12, 2016 |
| Debtor. | ) | Hearing Time: 11:00 a.m. |
| | ) | Hearing Location: 7 North |
| | ) | St. Louis, Missouri |
| | ) | |
| | ) | |
| | ) | Robert E. Eggmann, Esq. |
| | ) | Christopher J. Lawhorn, Esq. |
| | ) | Thomas H. Riske, Esq. |
| | ) | Carmody MacDonald P.C. |
| | ) | 120 South Central Ave., Ste. 1800 |
| | ) | St. Louis, Missouri 63105 |
| | ) | (314) 854-8600 |
| | ) | ree@carmodymacdonald.com |
| | ) | cjl@carmodymacdonal.com |
| | ) | thr@carmodymacdonald.com |

**MEMORANDUM IN SUPPORT OF MOTION FOR CONFIRMATION THAT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 INCLUDES INDEMNIFIED NON-DEBTOR CO-DEFENDANTS, OR, IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS PURSUANT TO 11 U.S.C. § 105(a)**

COMES NOW Directory Distributing Associates, Inc. ("DDA" or "Debtor"), and for its Memorandum in Support of Motion for Confirmation that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Applies to Indemnified Non-Debtor Co-Defendants, or, in the alternative, for Stay of Proceedings Pursuant to 11 U.S.C. § 105(a) in light of its Voluntary Petition for Bankruptcy (ECF No. 1) filed on October 14, 2016 (the "Memorandum"), respectfully states as follows:

I.     **INTRODUCTION**

1.     Debtor is a defendant in two Fair Labor Standards Act ("FLSA") actions. The first action has been pending in Texas state court since August 2011, *Walker, et al. v. Directory Distributing Associates, Inc., et al.*, Cause No. 2011-50578, District Court of Harris County, Texas, 269th Judicial District ("*Walker*"). AT&T Corp. and several former employees of DDA

are co-defendants in *Walker*. The second, more recent case was filed in federal district court in the Northern District of California in May 2016, *Krawczyk et al. v. Directory Distributing Associates, Inc., et al.*, Case No. 3:16-cv-02531-VC ("*Krawczyk*"). AT&T Corp.; AT&T Inc.; AT&T Services, Inc.; YP Holdings LLC; YP Advertising & Publishing LLC; and YP LLC are co-defendants in *Krawczyk*.[1]

       2.      The plaintiffs in both actions are delivery workers who were hired by DDA as independent contractors to deliver telephone directories. The plaintiffs in these cases allege that DDA misclassified its workers as independent contractors and violated the FLSA by failing to compensate the workers in accordance with the FLSA's requirements. The plaintiffs further allege that the non-debtor co-defendants are liable as joint employers of DDA's workers. In other words, the plaintiffs' theory of liability is that DDA is liable for violations of the FLSA, and that the non-debtor co-defendants are derivatively liable because they were joint employers (both of which contentions the DDA and non-debtor co-defendants dispute). DDA performed deliveries pursuant to Material and Services Agreements ("MSAs") with AT&T Services, Inc. Pursuant to the MSAs and subsequent assignment, DDA may be contractually obligated to indemnify some or all of the corporate non-debtor co-defendants. Pursuant to various theories, DDA may be obligated to indemnify some or all of the individual *Walker* defendants. In fact, DDA has agreed to defend the litigation on behalf of the individual defendants.

       3.      DDA filed its Petition in this Court on October 14, 2016, thus triggering the automatic stay provision of 11 U.S.C. § 362(a) as to proceeding with these actions against the Debtor. Courts have applied the automatic stay to non-debtor co-defendants when the co-defendants are indemnified by the debtor such that the debtor is the real party in interest in the underlying litigation. Moreover, independent of any indemnity obligations (or in connection therewith), courts have enjoined parties from proceeding in multiple actions under 11 U.S.C.

---

[1] This Memorandum is filed subject to and without waiver of any rights of the Debtor, including, but not limited to, the Debtor's right to review, evaluate, defend, and object to the claims and assertions of any of the plaintiffs or co-defendants.

§ 105(a). Here, the *Walker* and *Krawczyk* plaintiffs must litigate and establish DDA's liability as a prerequisite to pursing a derivative joint employer theory of liability against the corporate defendants.  The DDA estate may be significantly impacted if the *Krawczyk* and *Walker* actions are allowed to proceed.  Specifically, by allowing the litigation to continue, DDA's estate may be exposed to the risk of fixing the currently contingent claims of the various parties.  In addition, allowing litigation to continue would drag DDA into time-consuming and expensive litigation that would deprive DDA of the ability to cost-effectively manage this bankruptcy case.  For example, DDA is in possession of some of the key documents reflecting the identity of some or all of the workers, the work performed, and other potentially material information.  In light of these circumstances, DDA requests this Court confirm that Section 362(a)'s automatic stay applies to any indemnified co-defendants in the *Walker* or *Krawczyk* matters.  In the alternative, DDA requests this Court enjoin the parties from proceeding with the *Walker* and *Krawczyk* proceedings under its Section 105 authority.

## II.     BACKGROUND

### A.     DDA's Business

4.     Before it ceased operating, DDA, a Missouri corporation, delivered printed telephone directories on behalf of various telecommunications companies and telephone book directory publishers to homes and businesses across the United States.  To perform the deliveries, DDA retained independent contractors who were paid according to the delivery routes that were chosen by mutual agreement.

### B.     DDA's Relationship With The Non-Debtor Corporate Co-Defendants

5.     On April 7, 2010, DDA entered into an MSA with AT&T Services, Inc. AT&T Services, Inc. is asserted to be an affiliate of AT&T Corp. and a subsidiary of AT&T Inc.

6.     The 2010 MSA provides for indemnity under certain circumstances:

> Should a third party bring a claim or suit against a Party to this Agreement, or against said Party's parent or Affiliate(s) or subsidiary(s), and should that claim or suit be based wholly or substantially upon the acts or omissions of the other Party to this Agreement or its subcontractors in respect to said other Party's obligations under this Agreement, then the Party that committed such act or

omission (hereinafter 'Indemnifying Party') shall fully defend and indemnify the other Party and such Parties' parents, Affiliates and subsidiaries (hereinafter 'each an Indemnified Party') for Loss. This duty to defend and indemnify shall include, but not be limited to, Supplier's failure to comply with the terms of Section 4.3, Independent Contractor. *See* Section 3.18(a)

The referenced Independent Contractor provision further provides:

Supplier hereby represents and warrants to AT&T that:
a. Supplier is engaged in an independent business and will perform all obligations under this Agreement as an independent contractor and not as the agent or employee of AT&T;
b. Supplier's personnel performing Services shall be considered solely the employees and/or independent contractors of Supplier and not employees or agents of AT&T;
c. Supplier has and retains the right to exercise full control of and supervision over the performance of the Services and full control over the employment, direction, assignment, compensation, and discharge of all personnel performing the Services;
d. Supplier is solely responsible for all matters relating to compensation and benefits for all of
e. Supplier's personnel who perform Services. This responsibility includes (i) timely payment of compensation and benefits, including but not limited to, overtime, medical, dental, and any other benefit, and (ii) all matters relating to compliance with all employer obligations to withhold employee taxes, pay employee and employer taxes, and file payroll tax returns and information returns under local, state and federal income tax laws, unemployment compensation insurance and state disability insurance tax laws, social security and Medicare tax laws, and all other payroll tax laws or similar laws with respect to all Supplier personnel providing Services;
f. Supplier shall indemnify, hold harmless and defend AT&T from all Losses related to Supplier's failure to comply with the immediately preceding paragraph in accordance with the Section entitled "Indemnity." *See* Section 4.3.

7. AT&T Services, Inc. and the various other corporate co-defendants have asserted varied relationships and histories with one another. Some or all of these entities have asserted rights under the indemnity or other clauses contained within the various MSAs.

{14626/00000/1899646.DOCX.} 4

C.  **DDA's Relationship With The Non-Debtor Individual Defendants**

8. The individual defendants are former employees of DDA. The allegations against them mirror the allegations against DDA. In theory (and subject to any defenses), plaintiffs may attempt to use any testimony at deposition or trial of the former employee defendants against DDA. In addition, plaintiffs may attempt to argue that any findings or rulings as to the individuals are somehow binding on DDA. Further, it is expected that the individual defendants will assert common law or other claims as to indemnity from DDA. Finally, DDA has agreed to pay the costs of litigation for the individual defendants.

D.  **The *Walker* Litigation**

9. DDA, AT&T Corp., and various former employees of DDA are co-defendants in *Walker, et al. v. Directory Distributing Associates, Inc., et al.*, a conditionally certified FLSA collective action pending in the District Court of Harris County, Texas, 269th Judicial District. The plaintiffs in the *Walker* action allege they were workers hired by DDA to deliver "AT&T telephone directories" on behalf of AT&T Advertising and Publishing and were misclassified as independent contractors and denied overtime. The conditionally certified class is defined as "All current and former individuals who Directory Distributing Associates, Inc.: 1) hired to deliver AT&T telephone directories during the period from June 25, 2009 to the present, and 2) classified as independent contractors." The *Walker* plaintiffs were given until January 25, 2013 to send a notice to potential collective action members, and the deadline for responses was set as March 29, 2013.

10. On May 3, 2013, DDA moved to dismiss 15,993 plaintiffs who had opted in to the *Walker* action, arguing that venue was improper under the Texas Civil Practice & Remedies Code as to these opt-in plaintiffs because they did not reside or distribute telephone directories in Texas. The *Walker* court granted the motion to dismiss on September 19, 2013. The court's order was affirmed by the Texas Court of Appeals on February 26, 2015, and the Texas Supreme Court denied review. Plaintiffs appear to maintain that there are presently more than 2,500 opt-in plaintiffs in the *Walker* action.

{14626/00000/1899646.DOCX.}                                5

11. Under the most recent scheduling order in the case, the discovery cut-off is currently set as April 17, 2017; the dispositive motion hearing deadline is May 17, 2017; and the trial is set to begin July 17, 2017.

12. DDA filed a Notice of Suggestion of Bankruptcy and Application of Automatic Stay in the *Walker* action on October 14, 2016. On October 17, 2016, AT&T Corp. filed a Notice of the Effect on AT&T Corp. of the Bankruptcy Filing By Defendant Directory Distributing Associates, Inc. In its Notice, AT&T Corp. asserted that case law supported the position that the automatic stay imposed by 11 U.S.C. section 362(a) applies to AT&T Corp. and that this Court is the proper forum to determine the scope of the automatic stay. The *Walker* court has not issued any ruling addressing the applicability of the automatic stay.

13. DDA and the individual co-defendants removed the *Walker* case from State Court to the United States Bankruptcy Court for the Southern District of Texas, Houston Division on November 23, 2016.

**E.    The *Krawczyk* Litigation**

14. On May 10, 2016, Plaintiff James Krawczyk filed *Krawczyk v. Directory Distributing Associates Inc. and AT&T Corp.*, Case No. 3:16-cv-02531-VC, in the United States District Court for the Northern District of California. On August 30, 2016, Plaintiff Krawczyk filed a First Amended Complaint ("FAC"), adding David Estrada as a second named plaintiff and adding five new defendants: AT&T Inc., AT&T Services, Inc.; YP Advertising & Publishing LLC (successor to AT&T Advertising, LP, incorrectly sued as AT&T Advertising, LP d/b/a AT&T Advertising and Publishing, d/b/a AT&T Advertising Solutions, d/b/a Pacific Bell Directory, d/b/a YP Western Directory LLC); YP Holdings LLC; and YP LLC (successor to YP Shared Services LLC, incorrectly sued as YP Shared Services, LP).

15. The *Krawczyk* plaintiffs purport to bring the claims of the non-Texas opt-in plaintiffs who were dismissed from the *Walker* action, as well as new claims based on alleged violations of the FLSA affecting DDA delivery workers between May 10, 2013 and the present. As exhibits to their initial Complaint, Plaintiff Krawczyk filed copies of approximately 16,975

opt-in consent forms purportedly filed by "non-Texas plaintiffs" who were dismissed from the *Walker* action. Thus, it appears that the plaintiffs are seeking to pursue claims on behalf of at least 16,975 workers in the *Krawczyk* case. All of the defendants in *Krawczyk*, including DDA, have filed motions to dismiss the FAC.

16. DDA filed its Suggestion in Bankruptcy in the *Krawczyk* case on October 17, 2016. On that same day, the non-debtor corporate co-defendants filed a Notice of Effect on Remaining Defendants of Bankruptcy Filing by Defendant Directory Distributing Associates, Inc., similar to the notice filed by AT&T Corp. in the *Walker* case.[2] On October 18, 2016, the Court ordered Plaintiffs to file a response to the Notice regarding the effect of DDA's bankruptcy on the *Krawczyk* case. Plaintiffs responded on October 25, 2016. The *Krawczyk* court has not issued any ruling on the applicability of the automatic stay. Instead, the Court has allowed the case to proceed, opened discovery, and heard argument on the non-debtor co-defndant's motion to dismiss.

### III. ARGUMENT

#### A. This Court Is The Forum To Determine The Scope Of The Automatic Stay.

17. Authority in each venue affected by DDA's bankruptcy filing and the litigation (i.e., Missouri, California, and Texas) suggests that the determination as to the scope of the automatic stay is a matter that should be left to the jurisdiction of the Bankruptcy Court. *See, e.g.*, *Farley v. Henson,* 2 F.3d 273, 275 (8th Cir. 1993) ("Only the bankruptcy court may grant relief from the automatic stay."); *In re Gruntz,* 202 F.3d 1074, 1082 (9th Cir. 2000) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts."); *Raytheon Co. v. Boccard USA Corp., 369* S.W.3d 626, 632 (Tex. App. 2012) ("The automatic stay is 'self-executing, effective upon the filing of the bankruptcy petition,' and it acts as 'an injunction issuing from the authority of the bankruptcy court.'") (quoting *In re Gruntz,* 202 F.3d at 1081–

---

[2] AT&T Inc. did not join the Notice because it contends that the *Krawczyk* court lacks personal jurisdiction over it.

{14626/00000/1899646.DOCX.}    7

82); *Reed v. US Bank N.A.,* No. 14-CV-05437-VC, 2015 WL 5042244, at *2 (N.D. Cal. Aug. 25, 2015) ( "[T]he power to enforce or modify an automatic stay is vested exclusively in the bankruptcy court."). Moreover, given that the *Walker* and *Krawczyk* courts could issue inconsistent rulings on this issue, this Court is also the most efficient forum to determine the scope of the stay. *See Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 5417083, at *2 (D. Colo. Nov. 8, 2011) ("[O]ne of the purposes of the automatic stay is to ensure that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts.") (internal quotations omitted). Indeed, the *Krawczyk* Plaintiffs concede that this Court is the appropriate forum to determine the scope of the automatic stay. [3]

18. As explained below, the scope of the automatic stay should encompass the non-debtor co-defendants in the Texas and California actions to the extent an indemnification obligation exists between the parties. Alternatively, the Court should enjoin the parties from proceeding in the *Walker* and *Krawczyk* matters because the Debtor would be necessarily drawn into any litigation against the non-debtor co-defendants.

**B. The Automatic Stay Should Extend To The Indemnified Non-Debtor Co-Defendants.**

19. Pursuant to 11 U.S.C. § 362(a), the *Walker* and *Krawczyk* proceedings are automatically stayed against DDA. The scope of the automatic stay also includes non-debtor co-defendants who may possess rights of indemnity against DDA, such that any action against the non-debtors would be subject to the same stay.

20. The automatic stay imposed by 11 U.S.C. § 362(a) "prohibits judicial proceedings and enforcement of judgments against a debtor or property of the estate." *In re ContinentalAFA Dispensing Co.,* 403 B.R. 653, 658–59 (Bankr. E.D. Mo. 2009) (citing *In re Veeco Inv. Co., L.P.*, 157 B.R. 452, 454 (Bankr. E.D. Mo. 1993)). This District recognizes that the automatic stay can include non-debtors. *See, e.g.*, *ContinentalAFA,* 403 B.R. at 659 (recognizing the exception set

---

[3] The Plaintiffs in *Walker* are represented by the same counsel as the Plaintiffs in *Krawcyzk*.

{14626/00000/1899646.DOCX.} 8

forth in *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir. 1986) (hereinafter "*Robins I*"), as a basis for extending the automatic stay to non-debtors because actions against the non-debtors would "significantly affect Debtors who are protected under the automatic stay"); *In re Veliotis*, 79 B.R. 846, 848 (Bankr. E.D. Mo. 1987) ("The stay **operates automatically** in a non-bankruptcy lawsuit when a judgment against a non-debtor defendant is in effect a judgment against the debtor, and, therefore, a claim against the estate. In these situations, the Debtor is determined to be the real party in interest either ***by way of indemnification*** or other immediate operation of law.") (citing *Robins I*, 788 F.2d 994).

21. In *Robins I*, the Fourth Circuit explained that extension of the stay is warranted "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgement or a finding against the debtor." *Robins I*, 788 F.2d at 999. The *Robins I* Court added that there are factors beyond the indemnity that would support extension of the automatic stay.

> It seems incontestable that, if the suits are permitted to continue and discovery allowed, any effort at reorganization of the debtor will be frustrated, if not permanently thwarted. It is obvious from the record that if suits are permitted to proceed against indemnitees on claims on which the indemnitees are entitled to indemnity by Robins, either a binding judgment against the debtor will result or, as the court in *Metal Center* said, inconsistent judgments will result, calling for the exercise of the court's equitable powers. In our opinion, the record was thus more than adequate to support the district court's grant of injunctive relief. Certainly, the district court did not commit an abuse of discretion in granting the injunction herein.

*Id*. at 1008.

Thus, the indemnity and related factors all support extension of the stay.

22. Here, the same concerns of a binding judgment against the Debtor and inconsistent judgments may exist. Non-debtor co-defendants may be entitled to indemnity from DDA for violations of the FLSA alleged by the Plaintiffs. *See* Section 3.18 of the 2010 MSA. The individual defendants in *Walker* may be entitled to similar protection. As discussed below, many of the same *Robins I* factors may also exist here to justify the extension of the stay and an

injunction.

### C.  Without The Stay Or An Injunction, The Debtor Will Necessarily Be Drawn Into The Litigation In *Walker* And *Krawczyk.*

23.  In the alternative, this Court should enjoin the parties from proceeding in both the *Walker* and *Krawczyk* matters.  Under its equitable powers, this Court may "issue any orders, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also In re Panther Mountain Land Development, LLC,* 686 F.3d 916, 927 (8th Cir. 2012).  The *Robins II* court found two equitable bases for the court's authority to stay the third-party suit against a co-defendant.

> Both 11 U.S.C. § 105 and 28 U.S.C. § 1334 give the court general equity power to stay litigation that could interfere with the reorganization of the debtor. In addition to jeopardizing the debtor's property, we said, the litigation would adversely affect the reorganization because it would subject Robins' officers, directors, and employees to extensive discovery.

*In re A.H. Robins Co., Inc.,* 828 F.2d 1023, 1025 (4th Cir. 1987) ("*Robins II*").

24.  Indeed, the Fourth Circuit revisited *Robins I* because plaintiffs had drafted new complaints against Aetna carving out A.H. Robins such that it could not be said that "a judgment against Aetna would in effect be a judgment against Robins" because "the complaints expressly exclude any recovery from Robins' insurance proceeds."  *See, e.g.*, *Robins II*, 828 F.2d at 1025.  In *Robins II*, the Fourth Circuit proceeded on the assumption that "a suit against Aetna based solely on its own negligence would implicate no property of debtor A.H. Robins and thus would not be precluded by section 362(a)(3)."  *Id*. at 1026.  Despite proceeding on that assumption, the Fourth Circuit upheld the *Robins I* stay as to non-debtor Aetna for equitable reasons because proceeding with the case against Aetna would irreparably harm the debtor.  *Id*. (acting under the court's Section 105 authority).  The court found irreparable harm to the debtor because litigation against the non-debtor would impose a burden "on Robins' officers, directors, and employees, which would exhaust their energies and thus interfere with the debtor's reorganization."  *Id*.  Plaintiffs' promise not to "depose any of Robins' officers, directors, or employees, or otherwise

{14626/00000/1899646.DOCX.}                                                10

subject them to the costs of litigation," was insufficient because "[plaintiffs] cannot compel Aetna to follow the same hands-off policy." *Id*. The court emphasized that "Aetna must involve Robins in this litigation," that "Robins will inexorably be drawn into this litigation," and that "this involvement will put a substantial burden on Robins." *Id*.

25. Here, the non-debtor co-defendants are not likely to follow a "hands-off policy" as to DDA, even if the plaintiffs did make such a commitment.[4] Accordingly, proceeding with the litigation against the non-debtor co-defendants will simultaneously and inexorably draw DDA into two complex actions, in separate venues, in two different states—imposing an irreparable burden on DDA's time and causing DDA to incur additional legal expenses while distracting management from its focus on the chapter 11 case.

26. To be more specific, the burden of being drawn into discovery in these matters is substantial. In the *Walker* matter, the plaintiffs pursue claims on behalf of seven named plaintiffs and purportedly more than 2,500 opt-in plaintiffs. In the *Krawczyk* matter, there are two named plaintiffs who apparently seek to pursue claims on behalf of potentially 16,975 or more potential plaintiffs. DDA may have hired each of these individuals as independent contractors and may be in possession of documents pertaining to these individuals' work and compensation, including the independent contractor contracts, training materials, time sheets, and pay stubs, among other records. DDA believes the quantity of relevant hard copy documents currently in storage to be at least several tractor trailer loads of documents. The cost and time burden on DDA to even review the documents for responsiveness and privilege issues would overwhelm this bankruptcy estate. Likewise, many of the employees and former employees of DDA would be deposed if the two cases proceed. As such, staying the proceedings as to non-debtor co-defendants is proper because neither plaintiffs, nor non-debtor co-defendants, can proceed in two simultaneous complex cases without imposing a substantial discovery burden on

---

[4] To the contrary, the plaintiffs have made their intention to proceed with discovery even as to DDA clear. On October 25, 2016, Plaintiffs in *Krawczyk* filed a Response to the Court's Order Requesting Response on Effect of Bankruptcy Filing by DDA and argued that discovery in that case may proceed against both *the debtor* and non-debtor parties. *Krawczyk* Dkt. No. 94 at pp. 3, 9.

{14626/00000/1899646.DOCX.}                                11

the Debtor.  *See, e.g.*, *Robins I*, 788 F.2d at 996 (staying thousands of personal injury lawsuits involving claims arising out of use of Dalkon Shield contraceptive device); *In re Johns–Manville Corp.,* 26 B.R. 420, 422–26 (Bankr. S.D.N.Y. 1983) (staying thousands of personal injury asbestos lawsuits brought against debtor's officers and employees); *see also Millard v. Dev. Disabilities Inst., Inc.,* 266 B.R. 42, 44-45 (E.D.N.Y. 2001) (declining to extend the stay in a single plaintiff FLSA case alleging $76,000 in unpaid wages because "this case is not so complex as to require an inordinate amount of time").

27. Moreover, the discovery of DDA's records, which are necessary for this matter to proceed, will be functionally the same as if plaintiffs' actions against DDA were not stayed. Thus, refusing to acknowledge the stay or an injunction as to the non-debtor co-defendants essentially allows plaintiffs to circumvent much of what Section 362(a) was designed to protect.

### D. The Debtor Intends To Seek A Resolution Of These Cases While They Are Stayed.

28. The stay or injunction against these cases moving forward in Texas and California has very practical purposes that may assist the Debtor, its estate, and all the parties.  While plans may change, DDA currently intends to seek an order requiring mandatory mediation.  To the extent that does not resolve the issues, DDA will consider other alternatives to expeditiously resolve these cases.  These processes will save all the parties an immense amount of money and time that would otherwise be spent litigating in two courts, in two states, in cases involving numerous parties.

### IV. CONCLUSION

29. For the foregoing reasons, this Court should confirm that the automatic stay applies to plaintiffs' actions against any indemnified non-debtor co-defendant in both *Walker* and *Krawczyk*.  Alternatively, this Court should enjoin the parties from proceeding in the *Walker* and *Krawczyk* cases under its equitable powers because (i) continuing the actions would irreparably harm DDA's resources in responding to vast discovery while attempting to administer this estate, and (ii) the non-debtor corporate co-defendants' liability requires a predicate finding that DDA

was the plaintiffs' employer, a disputed fact in these cases.

  WHEREFORE, the Debtor respectfully requests that this Court grant this Motion and for such other and further relief as this Court deems just and proper.

Dated: December 2, 2016          Respectfully submitted,

                 CARMODY MacDONALD P.C.

                 By: /s/ *Christopher J. Lawhorn*
                     Robert E. Eggmann#37374MO
                     Christopher J. Lawhorn #45713MO
                     Thomas H. Riske #61838MO
                     Carmody MacDonald P.C.
                     120 South Central Ave., Ste. 1800
                     St. Louis, Missouri 63105
                     (314) 854-8600
                     ree@carmodymacdonald.com
                     cjl@carmodymacdonal.com
                     thr@carmodymacdonald.com

                 *Attorneys for Debtor*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 2nd day of December, 2016, that a true and correct copy of the above and foregoing pleading was served by electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Eastern District of Missouri which will send notification of such filing to the following registered parties in interest:

Office of the U.S. Trustee, USTPRegion13.SL.ECF@USDOJ.gov

E. Rebecca Case on behalf of Creditor The Globe Building Company, erc@stoneleyton.com, erecf@gmail.com

Bonnie L. Clair on behalf of Creditor Wage and Hour Class, blcattymo@summerscomptonwells.com

David L. Going on behalf of Interested Party AT&T, dgoing@armstrongteasdale.com, oharmon@armstrongteasdale.com

David L. Going on behalf of Interested Party Print Media LLC, dgoing@armstrongteasdale.com, oharmon@armstrongteasdale.com

David L. Going on behalf of Interested Party YP Holdings, LLC, dgoing@armstrongteasdale.com, oharmon@armstrongteasdale.com

David L. Going on behalf of Interested Party YP LLC, dgoing@armstrongteasdale.com, oharmon@armstrongteasdale.com

The undersigned hereby certifies that a true and correct copy of the above and foregoing pleading was served via U.S. Mail, postage prepaid, this 2nd day of December, 2016 to:

Steven A. Ginther on behalf of Creditor Missouri Department of Revenue
Missouri Dept. of Revenue
General Counsel's Office
P.O. Box 475
Jefferson City, MO  65105

*/s/ Christopher J. Lawhorn*