IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Case No.  16-47428-659 |
| DIRECTORY DISTRIBUTING | ) | |
| ASSOCIATES, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | Hon. Kathy A. Surratt-States |
| UNITED STATES TRUSTEE, | ) | Chief United States Bankruptcy Judge |
| | ) | |
| Movant, | ) | Hearing Date: |
| | ) | Hearing Time: |
| | ) | Hearing Location:  7 North |
| v. | ) | St. Louis, Missouri |
| | ) | |
| DIRECTORY DISTRIBUTING | ) | Carole J. Ryczek |
| ASSOCIATES, INC., | ) | Office of the United States Trustee |
| Respondent. | ) | 111 South 10th Street |
| | ) | Suite 6.353 |
| | ) | St. Louis, Missouri 63102 |
| | ) | (314) 539-2982 |
| | ) | carole.ryczek@usdoj.gov |

**UNITED STATES TRUSTEE'S MOTION FOR THE
APPOINTMENT OF A CHAPTER 11 TRUSTEE
OR, IN THE ALTERNATIVE, AN EXAMINER**

   COMES NOW the Acting United States Trustee, Daniel J. Casamatta ("the United States Trustee"), by the undersigned Trial Attorney, and moves the Court pursuant to 11 U.S.C. § 1104 for entry of an order directing the appointment of a chapter 11 trustee or, in the alternative, an examiner in this case.  In support of this Motion and based on information and belief, the United States Trustee respectfully represents the following:

   1.  On October 14, 2016, the debtor in this case, Directory Distributing Associates, Inc. ("the Debtor") filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code ("the Bankruptcy Code") in this Court.

1

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor remains in control of its operations and assets as a debtor-in-possession.

3. The United States Trustee has not appointed a committee of unsecured creditors in this case despite attempts to solicit interest from creditors to serve on such a committee.

4. The Debtor is a private company, founded by John W. Runk, that was in the business of distributing telephone directories. The Debtor ceased operating at the end of 2015. All shares of the Debtor are held by the trusts of John W. Runk and his adult children: the Indenture Trust of John W. Runk, the Jack W. Runk Irrevocable Gift Trust, the Kristy Runk Bryan Irrevocable Gift Trust, and the Glen J. Runk Irrevocable Gift Trust. John W. Runk has been the Debtor's President since 1961, and Kristy Runk Bryan has been the Debtor's Secretary and General Counsel since 2005.

5. Due to the declining use of paper telephone directories, the Debtor does not expect to resume operations. The Debtor's stated objective in filing this chapter 11 case is to conduct an orderly liquidation of its assets and distribute the proceeds to the Debtor's creditors.

6. The Debtor is a defendant in two Fair Labor Standards Act lawsuits filed against the Debtor and others by individuals who delivered telephone directories for the Debtor. The first suit was filed in the District Court for Harris County, Texas, in 2011; the second, in the United States District Court for the Northern District of California in 2016. The plaintiffs in the lawsuits allege that the Debtor improperly classified them as independent contractors in order to avoid paying them the minimum wages and overtime pay required under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and seek to recover the compensation that they claim they should have been paid.

**DEBTOR'S BANKRUPTCY PAPERS**

7. According to the Debtor's Schedule A/B, the Debtor had $2,772,840.99 in assets on the petition date. The Debtor reported that $2,314,667.27 of its assets were comprised of funds in various bank accounts: $1,589,084.29 in a checking account at Bank of America; $54,000 in a workers'

2

compensaton funding account in which the Debtor "may not have an ownership interest"; and $671,582.98 in a cash investment account at Bank of America that is subject to a lien of ACE Insurance. The remaining assets listed on the Debtor's Schedule A/B are approximately $430,000 in account receivables and approximately $28,267 in prepaid expenses.

8. The Debtor reported on Schedule A/B that is does not have an interest in any real property, machinery, or equipment.

9. The Debtor's Schedule D states that the Debtor does not have any secured creditors. On Schedule E/F, the Debtor indicated that it does not owe anything to creditors holding unsecured priority claims. The Debtor identified 52 creditors holding unsecured, non-priority claims on Schedule E/F, but stated that the amounts the Debtor owes most of those creditors are either "unknown" or $0. The unsecured, non-priority claims for which the Debtor listed a value on Schedule E/F total $580,960.

10. Among the creditors the Debtor listed on Schedule E/F as having claims of "unkown" value on are the plaintiffs in the two Fair Labor Standards Act lawsuits.

11. In response to question 1 of the statement of financial affairs, the Debtor reported $0 in gross revenue for 2016; $29,410,819 in 2015; and $51,346,180 in 2014. The Debtor's answer to question 2 of the statement of financial affairs states that it had no income from sources other than the operation of its business.

12. The Debtor answered "none" to question 4 of the statement of financial affairs, dealing with payments or transfers of property that benefited insiders within one year of the petition date, and to question 13 of the statement of financial affairs, dealing with other transfers of money or property made within two years of the petition date.

13. The Debtor also answered "none" to question 30 of the statement of financial affairs, which asked whether the Debtor provided insiders with value in any form within one year of the petition date.

14. Kristy Runk Bryan signed the Debtor's petition, schedules, and statement of financial affairs. On Official Form 202, Declaration under Penalty of Perjury for Non-Individual Debtors, she stated that her position with the Debtor was "Attorney."

## THE SECTION 341 MEETING

15. The first meeting of creditors conducted pursuant to Section 341 of the Bankruptcy Code, 11 U.S.C. § 341 ("the Section 341 meeting") in this case took place on November 15, 2016.

16. Kristy Runk Bryan appeared at the Section 341 meeting and testified under oath on behalf of the Debtor at the meeting. Attorney Thomas H. Riske represented the Debtor at the Section 341 meeting.

17. During the Section 341 meeting, Kristy Runk Bryan testified that the Debtor's petition, schedules, and statement of financial affairs were true and correct, and that no changes had to be made to those documents to make them a more accurate representation of the Debtor's financial affairs.

18. Kristy Runk Bryan further testified that she ceased to be an employee of the Debtor when the Debtor ceased operations on December 31, 2015. She explained that since that time, she has been a contract employee with the Debtor. Under her contract with the Debtor, the Debtor is to pay Kristy Runk Bryan $200,000 for the first 1500 hours of work she performs, and $280 per hour thereafter. She testified that she exceeded the 1500 hour mark with the Debtor in mid-October 2016, and continued to perform services for the Debtor at the $280 hourly rate.

19. The Debtor's Schedule G does not mention the Debtor's contract with Kristy Runk Bryan. The only indication on the Debtor's schedules and statement of financial affairs that she ever

had a contract with the Debtor is a statement on Schedule E/F that the basis for her $200,000 claim against the Debtor is "Contractor – legal and administrative."

20. In response to questioning by the United States Trustee, Kristy Runk Bryan disclosed that the Debtor had paid her each of brothers, Glen Runk and Jack Runk, $144,000 during the first nine months of 2016 to "assure that they would not accept other employment" so that they could assist her in locating, moving, and accessing records she needed. They also investigated claims that directories were not delivered as they should have been. She further testified that the Debtor will pay her brothers $90 or $95 per hour for any additional services they perform.

21. At the Section 341 meeting, Kristy Runk Bryan revealed that her father, John Runk, had sold the Debtor's personal property during 2015 for $58,107 and that he remained in possession of the sale proceeds.

22. Although the Debtor's Schedule A/B mentions a $58,107 receivable aged 90 days or less, the Debtor's schedules and statement of financial affairs do not refer to the sale of the Debtor's machinery and equipment, the proceeds from the sale of the machinery and equipment, or John Runk's retention of those proceeds.

23. In response to questioning by counsel for the plaintiffs in the Fair Labor Standards Act lawsuits, Kristy Runk Bryan revealed that in the spring of 2014, the Debtor had distributed $10 million to its shareholders, the trusts of the Runk family members. She did not mention what happened to those funds thereafter.

**EVENTS FOLLOWING THE SECTION 341 MEETING**

24. Shortly after the Section 341 meeting and on at least two occasions thereafter, counsel for the United States Trustee has repeatedly told Debtor's counsel that if the Debtor wants Kristy Runk Bryan to perform services on its behalf, the Debtor must file an application with the Court to allow her eligibility for employment to be determined by the Court. The Debtor has not done so.

25. Soon after the Section 341 meeting, the United States Trustee asked the Debtor to provide financial statements for the period immediately prior to the 2014 distributions to shareholders, the period covering the 2014 distributions to shareholders, and the period immediately following the 2014 distributions to shareholders. The documents the Debtor produced in response to this request showed that, as Kristy Runk Bryan had testified at the Section 341 meeting, the Debtor made $10 million in distributions to shareholders in April 2014. The shareholders, including the Kristy Runk Bryan Irrevocable Gift Trust, promptly made $10 million in loans to the Debtor, with interest, secured by all of the Debtor's assets.

26. The United States Trustee then asked the Debtor to produce documents relating to the repayment of the $10 million in loans from shareholders. The documents the Debtor provided in response to this request revealed that the Debtor had paid a cumulative total of $55,769.80 in interest to shareholders on a quarterly basis, beginning on July 7, 2014, and ending on March 28, 2016. Those documents further showed that the Debtor repaid the $10 million in principal in full to its shareholders on or about March 28, 2016.

27. The Debtor's schedules and statement of financial affair not only omit any reference to the shareholder loans, the Debtor's repayment of the loans, or the interest payments, but affirmatively state that (a) the Debtor did not make any payments or transfers of property for the benefit of insiders within a year of the petition date (statement of financial affairs question 4), (b) the Debtor made no other transfers within two years of the petition date (statement of financial affairs question 13), and (c) the Debtor provided insiders with nothing of value during the year before it filed its petition in this case (statement of financial affairs question 30).

**NEED FOR A CHAPTER 11 TRUSTEE IN THIS CASE**

28. The circumstances of this case warrant the appointment of a trustee pursuant to Section 1104(a) of the Bankruptcy Code, 11 U.S.C. § 1104(a). Section 1104(a) provides that

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> >
> > (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1), (a)(2).

29. Section 102(3) of the Bankruptcy Code provides that the terms "includes" and "including" are not limiting. Thus, Section 1104(a)(1), which states that the court shall order the appointment of a trustee "for cause, including" various wrongs, does not contain an exhaustive list of the kinds of conduct that may constitute "cause" to appoint a chapter 11 trustee. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 472 (3d Cir. 1998); *Oklahoma Refining Co. v. Blaik*, 838 F.2d 1133, 1136 (10th Cir. 1988) (the court "need not find any of the enumerated wrongs to find cause for appointing a trustee").

30. Congress's use of the word "shall" in Section 1104(a)(1) indicates that the appointment of a chapter 11 trustee is not discretionary if there is "cause" within the meaning of Section 1104(a)(1). *Oklahoma Refining Co.*, 838 F.2d at 1136. Accordingly, should the Court find that the estate's fiduciaries engaged in "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management," due to acts or omissions that occurred either before or after the commencement of the case, the Court must direct the appointment of a trustee. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) (Section 1104(a)(1) of the Bankruptcy Code requires the

7

bankruptcy court "to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence and gross mismanagement."); *In re St. Louis Globe-Democrat, Inc.*, 63 B.R. 131, (Bankr. E.D. Mo. 1985).

31. Although appointment of a trustee is an extraordinary remedy, *Bellevue Place Associates,* 171 B.R. at 623, "Section 1104(a) represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." *Id.* (quoting *V. Salvino Oil & Heating Co. Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989))).

32. There is a split of authorities as to the standard the Court should apply in addressing a motion to appoint a Chapter 11 trustee. Some courts apply a preponderance of the evidence standard. *See, e.g., Tradex Corp. v. Morse*, 339 B.R. 823, 832 (D. Mass 2006) (adopting a preponderance of the evidence standard). Other courts have found that the bankruptcy court should apply a clear and convincing standard when considering a motion to appoint a Chapter 11 trustee. *See, e.g., In re Bellevue Place Assoc.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994) (applying a clear and convincing standard). Under either standard, the appointment of a chapter 11 trustee is appropriate in this case.

33. In *In re Intercat, Inc.*, 247 B.R. 911 (Bankr. S.D. Ga. 2000), the court noted that the factors on which the decision to appoint a chapter 11 trustee include (a) the materiality of the misconduct; (b) the evenhandedness or lack thereof in dealings with insiders or affiliated entities vis-à-vis other creditors or customers; (c) the existendce of pre-petition voidable fraudulent transfers or preferences; (d) unwillingness or inability of management to pusue estate causes of action; (e) conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and (f) self-dealing by management or waste or squandering of corporate assets. *Id.* at 921 (collecting cases). Each of these factors is, or is likely to be, present here: the Debtor's substantial pre-petition transfers to insiders, and the lack of disclosure of those transfers, is material; the Debtor has paid its insiders while leaving other creditors unpaid; the pre-petition payments to insiders might constitute

fraudulent transfers; Kristy Runk Bryan is unable, and likely would be unwilling, to pursue the estate's causes of action arising from transactions that benefited her and her immediate family members; the conflict of interest Kristy Runk Bryan has with respect to recovery of the pre-petition transfers interferes with her ability to fulfill her fiduciary duties; and the Runk family members personally profited and squandered the Debtor's assets by taking $10 million in distributions from the Debtor and then immediately making $10 million in interest-bearing, secured loans to the Debtor.

34.  It is not only the Debtor's transactions with insiders, but also its failure to disclose those transactions, that points to need for independent investigation and management of the Debtor's finances. By enacting Section 1104(a)(1) of the Bankruptcy Code, Congress mandated that a chapter 11 debtor-in-possession, who acts as a fiduciary of the estate, be an honest broker. "[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary duties of a trustee.'" *Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (quoting *Wolf v. Weinstein*, 372 U.S. 633, 649-52 (1963)). If a debtor-in-possession fails to carry out the fiduciary duties of a trustee, Section 1104(a) of the Bankruptcy Code requires that control over its affairs be turned over to an independent trustee. *See In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) ("And if the debtor-in-possession defaults in [carrying on the fiduciary responsibilities of a trustee], Section 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort be turned over to an independent trustee."). The Debtor's lack of candor is at odds with the fiduciary duties of a chapter 11 debtor-in-possession.[1]

---

[1]  The *Bellevue Place Associates* court observed that the debtor-in-possession's inability to fulfill its fiduciary obligations to creditors, equity security holders, and other interests of the estate also justifies the appointment of a trustee pursuant to Section 1104(a)(2) of the Bankruptcy Code. *Bellevue Place Associates*, 171 B.R. 615-16 ("To serve the interests of creditors, equity security holders, and other interests of the estate, the Bankruptcy Code imposes fiduciary duties upon a debtor-in-possession. The debtor-in-possession cannot exercise such fiduciary duties in this case and, therefore, it is in the

35. The Debtor's exclusion of relevant financial information on its schedules and statement of financial affairs warrants the appointment of a chapter 11 trustee in this case. *In re Deena Packaging Indus., Inc.*, 29 B.R. 705, 707 (Bankr. S.D.N.Y. 1983). The deficiencies in the Debtor's disclsoures are not minor; the Debtor not only omitted mention of John Runk's indebtedness to the Debtor and of large payments to or for the benefit of members of the Runk family, but affirmatively stated "None" in response to questions on the schedules and statement of financial affairs that called for the disclosure of this information. Appointment of an independent trustee is necessary to assure that the duties the Bankruptcy Code imposes on a debtor-in-possession are executed faithfully. *V. Savino Oil & Heating*, 99 B.R. at 526.

36. Even under the more stringent clear and convincing standard, there are grounds to appoint a chapter 11 trustee in this case. The testimony of the Debtor's own representative, Kristy Runk Bryan, shows that she allowed the Debtor's assets to be dissipated in order to benefit herself and her family members. Her role in permitting the transfers of the Debtor's assets, and her failure to disclose those transfers on the Debtor's bankruptcy papers, cast serious doubt on her ability or willingness to scrutinize those transactions and seek to recover any funds that were transferred improperly to members of her own family. *See Sharon Steel*, 871 F.2d at 1228 (finding clear and convincing evidence of the need to appoint a chapter 11 trustee where the debtor's management "engaged on the eve of bankruptcy in a systematic syphoning of" the debtor's assets to entities under common control, which raised "grave questions about current management's ability to fulfill its fiduciary duty as debtor-in-possession" to the debtor's creditors).

37. Even if the Court determines that there is insufficient cause to require the appointment of a trustee under Section 1104(a)(1), the Court may order the appointment of a trustee under the

---

interest of creditors, equity security holders, and the estate to appoint a trustee who can exercise such fiduciary duties.").

discretionary provisions of Section 1104(a)(2), which permits the appointment of a trustee if such action is in the interest of credtors, any equity security holders, and other interests of the estate, even in the absence of "cause." *Sharon Steel*, 871 F.2d at 1226.

38. In this case, the appointment of a chapter 11 trustee would be in the interest of the Debtors' creditors. There is no creditors' committee representing their interests, and the Debtor has not shown a willingness or capability to carry out its fiduciary duties to creditors. Appointing a chapter 11 trustee would ensure that appropriate consideration is given to possible fraudulent conveyance or preference actions against insiders, that actions taken by the Debtor during this case are in the best interests of creditors, and that the Debtor makes full disclosure of its finances and transactions.

39. If the Court does not appoint a chapter 11 trustee, the United States Trustee respectfully requests that the Court order the appointment of an examiner pursuant to Section 1104(c) of the Bankruptcy Code, 11 U.S.C. § 1104(c), which provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former manangement of the debtor if –
>
> > (1) such appointment is in ther interests of creditors, any equity security holders, or other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

11

40. As the United States Trustee explained above, it would serve the interests of the Debtor's creditors to have the tranfers between the Debtor and insiders examined by an independent and unbiased party. The Debtor is currently controlled by someone who cannot objectively investigate those transactions and determine whether there are any causes of action available against the beneficiaries of the transactions. To assure that the Debtor's affairs and fully and fairly scrutinized, the United States Trustee requests that the Court direct the appointment of an examiner if the Court decides not to order the appointment of a chapter 11 trustee.

For the reasons set forth above, the the United States Trustee respectfully requests that the Court direct the appointment of a chapter 11 trustee in this case pursuant to 11 U.S.C. § 1104(a), or, in the alternative, that the Court direct the appointment of an examiner pursuant to 11 U.S.C. § 1104(c).

    Respectfully submitted,

    DANIEL J. CASAMATTA
    Acting United States Trustee

    PAUL A. RANDOLPH
    Assistant United States Trustee

    */s/ Carole J. Ryczek*
    CAROLE J. RYCZEK
    E.D. Missouri Bar #6195873IL
    Trial Attorney
    111 S. 10th Street, Suite 6.353
    St. Louis, MO 63102
    PH: (314) 539-2982
    FAX: (314) 539-2990
    Email: carole.ryczek@usdoj.gov