**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 16-47428-659 |
| **DIRECTORY DISTRIBUTING** | ) | Chapter 11 |
| **ASSOCIATES, INC.,** | ) | The Honorable Kathy Surratt-States |
| | ) | |
| Debtor. | ) | Hearing Date:  January 8, 2017 |
| | ) | Hearing Time:  11:00 a.m. |
| | ) | Hearing Location: Courtroom 7 North |

**WAGE AND HOUR CLASSES' OBJECTION TO MOTION FOR CONFIRMATION THAT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 INCLUDES INDEMNIFIED NON-DEBTOR CO-DEFENDANTS, OR, IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS PURSUANT TO 11 U.S.C. § 105(a)**

COME NOW the represented Plaintiffs/Claimants (collectively, the "Wage and Hour Classes") in class actions pending in California and Texas captioned *Krawczyk et al. v. Directory Distributing Assocs., Inc. et al.*, No. 3:16-cv-02531-VC, in the United States District Court for the Northern District of California (the "Krawczyk Action" in the "California Federal Court"), and *Walker et al. v. Directory Distributing Assocs., Inc., et al.*, No. 16-03258, in the United States Bankruptcy Court for the Southern District of Texas[1] (the "Walker Action" in the "Texas Bankruptcy Court"), and state as follows for their Objection (the "Objection") to the Motion for Confirmation that the Automatic Stay Pursuant to 11 U.S.C. § 362 Includes Indemnified Non-Debtor Co-Defendants, or, in the Alternative, for Stay of Proceedings Pursuant to 11 U.S.C. § 105(a) (the "Motion for Stay") [Dkt. No. 29, with Memorandum in Support at Dkt. No. 36 (the "Memorandum") and Declaration of Kristy Runk Bryan in Support of Motion for Stay (the "Bryan Declaration") at Dkt. No. 37] filed by Debtor Directory Distributing Associates, Inc. ("DDA" or "Debtor") in the above-captioned Chapter 11 case:

---

[1] Prior to the Debtor's invocation of 28 U.S.C. § 1452 and request for removal in the Walker Action, that matter was pending as case number 2011-50578 in the 269th District Court (Harris County), Texas (the "Texas State Court").

**I.      INTRODUCTION**

Chapter 11 reorganizations primarily exist to assist financially distressed businesses by giving them breathing space in which to return to a viable state. However, if no viable business exists to be reorganized, then the only legitimate purpose of a Chapter 11 case can be the recovery and liquidation of a Debtor's assets and the distribution of those assets to the Debtor's creditors.

Here, the Debtor admits that it has no active operations. See Memorandum, Dkt. No. 36 at 3, ¶ 4. However, instead of acting to facilitate the prompt determination of its largest creditors' claims, the Debtor seeks, by the Motion for Stay, to have this Court extend the automatic stay of section 362 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1550 (the "Code") to the Debtor's co-defendants in the Walker and Krawczyk Actions. The Debtor claims that staying proceedings against its co-defendants in those Actions, including AT&T Corporation, AT&T Inc., AT&T Services, Inc., YP Holdings LLC, YP Advertising & Publishing LLC, YP LLC (the "AT&T Co-Defendants") and certain of DDA's former employees (together with the AT&T Co-Defendants, the "Co-Defendants"), is necessary to avoid "the risk of fixing the currently contingent claims of the various parties" while the automatic stay of section 362 of the Code pauses litigation against the Debtor. See Memorandum at 3, ¶ 3.[2]

Three grounds exist for this Court to deny the Motion for Stay. First, that Motion stands in an improper procedural posture because it is just that – a motion, and not an adversary proceeding as required by the applicable Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule").

---

[2] The AT&T Co-Defendants filed their Joinder to the Motion for Stay on January 2, 2017 [Dkt. No. 46].

1845083.2                                             2

Second, case law does not support the extension or grant of any stay to the Co-Defendants.  The facts of the Debtor's case do not present the sort of unusual circumstances where the stay typically gets extended, such as complex daily operations of an ongoing business or a time-consuming plan formulation process.   Indeed, the case law cited by the Debtor in the Memorandum not only fails to square with the actuality of the facts in this Chapter 11 case, but actually recognizes that relief of the type sought in the Motion for Stay rarely gets granted.

Third, and finally, on a practical basis, adjudication or other resolution of the Krawczyk and Walker Actions and recovery of assets to satisfy the allowed claims of the Wage and Hour Classes and the Co-Defendants in that litigation comprise the primary matters to be dealt with in the Debtor's Chapter 11 case.  As a result, staying those Actions makes no sense:  any stay only delays the ultimate resolution of this Chapter 11 case.  Indeed, unless the Debtor filed this Chapter 11 case solely to create obstacles for the Wage and Hour Classes and to foment litigation, the Debtor should seek to bring the Actions to their conclusion as soon as possible in order to liquidate claims, recover amounts subject to Chapter 5 actions in this matter before their recipients squander funds, and ensure a meaningful recovery for creditors in this matter.  As a result the Motion for Stay should be denied so that the Actions can proceed towards their ultimate resolution.

## II.    BACKGROUND

The Walker Action began in 2011, when the original plaintiff Ervin Walker filed his lawsuit against the Debtor in the 269th District Court (Harris County), Texas (the "Texas State Court").  Mr. Walker and other plaintiffs who joined his Action alleged violations of the Fair Labor Standards Act ("FLSA") based on a refusal by the Debtor and AT&T Corp. -- their joint employers -- to compensate them in the manner required by federal wage and hour laws.  In 2012, the Texas State Court conditionally certified a nationwide collective action and allowed

1845083.2                                                    3

similarly situated individuals from across the country to opt in to the Walker Action. At that point, thousands of additional plaintiffs opted in and joined the Walker Action.

In 2013, the Texas State Court, based on a state multiparty venue statute, granted the defendants' request to dismiss more than 15,500 opt-in plaintiffs who neither lived nor worked in Texas. In late 2013, the Walker plaintiffs took an accelerated appeal of that decision, and the Texas State Court stayed enforcement of its order pending resolution of that appeal. The appellate process lasted until April 1, 2016, when the Texas Supreme Court denied review of the appellate decision affirming the Texas State Court's order.

The Krawczyk Action began at that point against the Debtor and AT&T Corp. in the United States District Court for the Northern District of California (the "California Federal Court"). The Krawczyk Action includes the non-Texas opt-in plaintiffs dismissed from the Walker Action, as well as certain Texas-based plaintiffs seeking damages for the later time period encompassed by the Krawczyk Action.

Due to the extended appellate proceedings in the Walker Action and at the request of the parties, the Texas State Court reset the trial setting for a July 2017 jury trial; fact discovery in that matter was underway as of the October 14, 2016 petition date (the "Petition Date") in the Debtor's Chapter 11 case. As of the Petition Date, the AT&T Co-Defendants had a motion to dismiss or strike pending in the Krawczyk Action; the California Federal Court denied that motion in substantial part on December 9, 2016. The Krawczyk Action is set for court-ordered mediation, at least as to the Co-Defendants, on January 30, 2017.

### III.    ARGUMENT

**A.    The Motion for Stay seeks to circumvent the requirements of the Federal Rules of Bankruptcy Procedure.**

1845083.2                                           4

    **1.    The Debtor has not brought the Motion in compliance with Bankruptcy Rule 7001, which requires requests for an injunction to be brought as an adversary proceeding with petition and summons.**

By seeking a determination of the scope of the automatic stay or an order extending the automatic stay to the Co-Defendants, the Debtor seeks either an injunction or a declaratory judgment regarding the automatic stay, which itself is an injunction. However, proceedings of that type comprise adversary proceedings under Bankruptcy Rule 7001. See Fed. R. Bankr. P. 7001(6) (providing that a proceeding to obtain an injunction or other equitable relief comprises an adversary); Fed. R. Bankr. P. 7001(9) (providing that a proceeding to obtain a declaratory judgment regarding an injunction comprises an adversary); see also In re R&G Fin'l Corp., 441 B.R. 401, 407-08 (Bankr. D.P.R. 2010) ("A request for extension of the automatic stay provisions of Section 326(a) to a non debtor (sic) constitutes an action for injunctive relief and should be initiated by an adversary proceeding.").

Bankruptcy courts properly deny and dismiss attempts to obtain the protection of a stay for non-debtor parties when debtors fail to follow these required procedures. See In re Dahlquist, 33 B.R. 101, 103 (Bankr. S.D. 1983) (holding that there was "no choice" but to dismiss a request for extension of a stay to a non-debtor due to failure to institute action in accord with the Rules); see also In re All Seasons Resorts, Inc., 79 B.R. 901, 903 (Bankr. C.D. Cal. 1987) (finding that stay extension only comes properly before a court after the filing of an appropriate adversary proceeding); In re Sun Belt Elec. Constructors, Inc., 56 B.R. 686, 688 (Bankr. N.D. Ga. 1986 (finding that motion for injunctive or declaratory relief with regard to contracts should have been brought as adversary proceeding and dismissing motion). The Motion for Stay simply cannot be granted because it seeks relief only available in an adversary proceeding. Thus, this Court should deny the Motion for Stay until the Debtor brings it properly and follows the procedures applicable to adversary proceedings.

**B.      The Motion for Stay fails to satisfy the legal requirements for issuance of any injunction in this matter.**

    **1.      The Debtor cannot satisfy the standards necessary to obtain an injunction in favor of the Co-Defendants.**

The Motion for Stay and its supporting documents fail to give anything other than a cursory mention of the law actually applicable to requests for an injunction extending the automatic stay to non-debtors. Precedent clearly provides that this Court only should enjoin creditor actions against a non-debtor third party under limited circumstances where the lack of an injunction would pressure the debtor through the third party to accomplish something that the creditor could not accomplish directly. See River Family Farms, Inc. v. Federal Land Bank of Omaha, 85 B.R. 816, 819 (Bankr. N.D. Iowa 1987); In re Juneau's Builders Ctr., Inc., 57 B.R. 254, 258 (Bankr. M.D. La. 1986). In other words, a debtor only can obtain an injunction against a creditor pursuing a non-debtor third party if the debtor can show that the creditor is not pursuing a legitimate right regarding the third party. See Juneau's, 57 B.R. at 258-59.

In addition, a debtor must meet the standard required for any injunction in order to obtain one that prevents action against non-debtors. See Juneau's, 57 B.R. at 259. Under the usual invocation of that standard, a debtor must show (1) irreparable harm to the bankruptcy estate absent entry of the requested injunction, (2) a strong likelihood of success on the merits, i.e. of confirming a successful reorganization plan, and (3) that there will no or minimal harm to the parties sought to be enjoined. See Juneau's, 57 B.R. at 259, In re Otero Mills, Inc., 21 B.R. 777, 778-79 (Bankr. D.N.M. 1982). In some cases, courts have held that they also must consider the public interest in evaluating injunctive relief. See River Family Farms, 85 B.R. at 819. However, the facts of this matter militate a finding that the Debtor cannot meet its burden to show that the necessary special circumstances exist. See generally In re Adelphia Comm'ns

Corp., 298 B.R. 49, 54 (S.D.N.Y. 2003) (finding that debtor "bears the burden of demonstrating that circumstances warrant extending the stay").

Extending the stay will not prevent any irreparable harm to the Debtor. The Debtor has no active day-to-day operations, let alone any operations that generate cash flow or that could be impacted. See Memorandum, Dkt. No. 36 at 3, ¶ 4. Thus, permitting the Walker and Krawczyk Actions to proceed against the Co-Defendants will not result in, for example, distraction of the Debtor's principals from business operations or impairment of the Debtor's ability to obtain new business. See In re Third Eighty-Ninth Assocs., 138 B.R. 144, 148 (S.D.N.Y. 1992) (affirming ruling below extending stay to debtor affiliate responsible for managing and supervising operating debtor's staff debtor and declining to extend stay to debtor affiliates who could not prove extent of management responsibilities, ability and/or willingness to fund reorganization, or extent of any alleged impact in having to defend in state court action).

Turning to the merits of the matter of the Debtor's Chapter 11 case, there is no likelihood that the Debtor can – or will -- propose any reorganization plan because this is, quite simply, a liquidating case. The Debtor admittedly ceased active operations pre-petition, see Memorandum, Dkt. No. 36 at 3, ¶ 4, so reorganization is out of the question.

Moreover, the Debtor cannot confirm even a liquidating Chapter 11 plan without the consent or agreement of the Wage and Hour Classes. The Debtor's Schedules, located on the Court's docket as item 23, list no secured creditors and no amounts owed to priority unsecured creditors. See Dkt. No. 23 at 2 (Summary of Assets and Liabilities for Non-Individuals); at 8 (Schedule D); at 9-10 (Schedule E/F). The Debtor's Schedules do list $580,960.80 in general unsecured creditors, see id. at 2 (Summary of Assets and Liabilities for Non-Individuals); at 10-17 (Schedule E/F), but those Schedules assign no dollar amount to the Wage and Hour Classes'

1845083.2                                    7

claims.[3]  However, the Wage and Hour Classes estimate their claims to total $20 million, which dwarves all other creditors' claims.

If the Debtor's Schedules are accurate in their creditor listing, then the Debtor only has unsecured creditors and – absent any impermissible gerrymandering of creditor classes or payment in full to all unsecured creditors -- the Debtor would have to propose treatment amenable to the Wage and Classes in order to have any impaired class of creditors consent to a Chapter 11 plan in this matter.  See 11 U.S.C. § 1129(a)(8) (conditioning plan confirmation upon acceptance of the plan by every class or proposal of a plan that does not impair any class); 11 U.S.C. § 1129(a)(10) (requiring at least one impaired class of creditors to accept a plan in order to obtain confirmation).  As a result, the Debtor only can achieve confirmation if the Wage and Hour Classes accede to whatever the Debtor proposes; right now the Debtor proposes to prevent liquidation of the Classes' claims and the Classes oppose that result.  A grant of the Motion for Stay negatively will impact the Debtor's ability to confirm any plan in this matter and if this Debtor cannot confirm a plan, it cannot succeed on the merits of its Chapter 11 case.

Next, extending the stay to the Co-Defendants will result in substantial harm to the Wage and Hour Classes.  The Classes made substantial progress in the Actions pre-petition; indeed, the AT&T Co-Defendants' motions to dismiss the Walker Action were pending as of the petition date in the Debtors' Chapter 11 case and the ruling in that Action that substantially denied those motions to dismiss has advanced that matter further.  Moreover, the Classes, as well as the Co-Defendants, have expended substantial time and effort in those Actions in order to ascertain the Co-Defendants' liability to the Classes and, potentially, at least the AT&T Co-Defendants' claims against the Debtor.  As a result, anything that delays resolution of the Actions leads only

---

[3] Interestingly, the Schedules also do not assign any dollar amount to any claims by the Co-Defendants. See Dkt. No. 23 at 10 (Schedule E/F).

1845083.2                                              8

to uncertainty that prevents this Chapter 11 case from proceeding to its ultimate disposition, whether that is confirmation, conversion, or dismissal. Indeed, the simple and presumably intentional filing of the Debtor's Chapter 11 case in the middle of the conduct of a deposition in the Walker Action and the Debtor's refusal to allow that deposition to conclude despite the fact that most of the participants had travelled to that deposition at substantial expense demonstrates the Debtor's intent to prejudice the Classes and the prosecution of their claims.

On a policy basis, extending the stay to the Co-Defendants would not benefit the bankruptcy system. Federal courts have limited resources and seek to maximize judicial efficiency in order to conserve those resources. Decelerating the process of addressing issues related to the Co-Defendants, such as the jurisdictional ones currently pending in the California Federal Court, only will delay the resolution of issues against the Co-Defendants and, in fact, may impair any ultimate resolution or adjudication of the Classes' claims against the Debtors.

Further, pursuit of the Co-Defendants comprises a legitimate action by the Wage and Hour Classes. The Classes have their rights against the Co-Defendants regardless of the Debtor's status in Chapter 11 and regardless of any indemnification allegedly agreed between the Debtor and the AT&T Co-Defendants or any alleged indemnification obligations that the Debtor may or may not have to the non-AT&T Co-Defendants. In fact, the Classes take the position that the Co-Defendants have independent liability to the Classes because the Co-Defendants acted as their employer as defined under the FLSA, <u>see</u> 29 U.S.C. § 203(d), and interpreted under prevailing case law. Thus, advancing the determination of the Co-Defendants' liability to the Classes comprises a legitimate goal that actually facilitates the Debtor's Chapter 11 case.

    2.    **<u>Robins</u> and its progeny do not square with the matter at bar.**

Instead of addressing the true requirements for the relief sought in the Motion for Stay, the Memorandum discusses the general outline of the automatic stay and focuses on rulings

issued in appeals from the A.H. Robins Chapter 11 case and relying upon those cases. See, e.g., Memorandum at 9-11, ¶¶ 20-26 (discussing In re A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) (Robins I) and In re A.H. Robins Co., Inc., 828 F.2d 1023 (4th Cir. 1987) (Robins II). However, the cases cited by the Debtor fail to square with the matter at hand. The Robins cases certainly comprised notable bankruptcy proceedings. However, they differ from this case in material ways.

First, the Robins Chapter 11 cases themselves involved a debtor that intended to reorganize. See Robins I, 788 F.2d at 1008. Second, as of the petition date in the Robins cases, there were over 5,000 product liability suits pending against the debtor. See id. at 995. Moreover, the Fourth Circuit found that success against Robins' co-defendants necessarily would reduce the funds available to all of the debtor's creditors. See id. at 1008.[4]

This case involves a very different set of facts. As discussed above, the Debtor cannot reorganize, so prompt liquidation of claims becomes the cornerstone of its Chapter 11 case. Second, as of the Petition Date, there were only two actions pending by the Wage and Hour Classes; those claimants have the same primary counsel in both Actions, as do the Co-Defendants. As a result, there is no overwhelming multiplicity of litigation here that needs to be remediated.

Further, and importantly, success against the Co-Defendants does not necessarily reduce the amount of funds available to all of the Debtor's creditors. If the Wage and Hour Claimants prevail against the Co-Defendants, they can recover from the Co-Defendants, which will remove the Classes' claims from the pool available to the Debtor's unsecured creditors. At that point, the Co-Defendants may choose to pursue action against the Debtor to determine if the MSAs (as

---

[4] Notably, Robins I arose as an appeal from a ruling in an adversary proceeding that the debtor filed to obtain declaratory relief that its insurance policy with its co-defendants in the pending suits comprised an estate asset. See id. at 996-97.

1845083.2                               10

defined in the Memorandum) or any legal theories create claims against the Debtor for indemnity, but any liability on that basis would be instead of, and not in addition to, the amounts owed to the Classes. In other words, there will be no net increase of the creditor pool in the Debtor's Chapter 11 case if the Co-Defendants satisfy all amounts owed to the Classes.

**C.     Grant of the Motion for Stay only delays the administration of this liquidating Chapter 11 case.**

This Chapter 11 case comprises a transparent attempt to delay the litigation in the Krawczyk and Walker Actions. To that end, the Debtor has failed to perform many of the tasks that must be handled at the outset of a Chapter 11 case. For example, even though the Debtor has been in Chapter 11 since mid-October, the Debtor has yet to file any of its monthly operating reports with this Court, to amend its Schedules and Statements of Financial Affairs as requested by the Office of the United States Trustee at the meeting of creditors held on November 15, 2016 to correct numerous inaccuracies, or to file an application to retain Bryan to provide services in, or in conjunction with, the case.

In contrast, while the Debtor has failed to complete basic Chapter 11 tasks, on November 23, 2016, the Debtor had Texas counsel file a Notice of Removal to remove the Walker Action to the Texas Bankruptcy Court under 28 U.S.C. § 1452(a), as well as a Motion to Limit Process and Pleadings that is set for hearing in that matter on January 5, 2017. This raises the issue of whether the Debtor's focus is on its Chapter 11 case and getting claims and assets liquidated or actually is on machinations in the Actions involving the Wage and Hour Classes.

Did the Debtor file its Chapter 11 case in order to protect assets for creditors? Or has the Debtor filed its case only to stop the litigation filed by the Wage and Hour Classes? Indeed, substantial issues exist about the administration of this case. On December 20, 2016, the Office of the United States Trustee filed its Motion for the Appointment of a Chapter 11 Trustee or, in

the Alternative, an Examiner [Dkt. No. 43] (the "<u>Trustee Motion</u>"). The Trustee Motion effectively and efficiently summarizes the present status of the Debtor's Chapter 11 case and asserts that the Debtor has yet to act in a fashion fully consistent with its fiduciary duties to creditors in this case. <u>See</u> Trustee Motion at 8-10, ¶ 33-35. The Trustee Motion points out a number of troubling indicia in this case:

> the Debtor's substantial pre-petition transfers to insiders, and the lack of disclosure of those transfers, is material; the Debtor has paid its insiders while leaving other creditors unpaid; the pre-petition payments to insiders might constitute fraudulent transfers; Kristy Runk Bryan is unable, and likely would be unwilling, to pursue the estate's causes of action arising from transactions that benefited her and her immediate family members; the conflict of interest Kristy Runk Bryan has with respect to recovery of the pre-petition transfers interferes with her ability to fulfill her fiduciary duties; and the Runk family members personally profited and squandered the Debtor's assets by taking $10 million in distributions from the Debtor and then immediately making $10 million in interest-bearing, secured loans to the Debtor.

<u>See id.</u> at 8-9, ¶ 33.

The Debtor chose to file this Chapter 11 case and if that case is going to proceed, then the Debtor's primary creditors, the Wage and Hour Classes and the Co-Defendants, <u>must</u> move forward to resolve or determine the Co-Defendants' liability for the Classes' claims and the amount of that liability. Until and unless that occurs, no creditors can be paid in any Chapter 11 case by the Debtor. Moreover, eventually both the Debtor and the Co-Defendants will have to participate in any judicial or non-judicial processes to reach that resolution because both the Debtor and the Co-Defendants employed the members of the Wage and Hour Classes under applicable federal non-bankruptcy precedent.

Extending the automatic stay – or any stay -- to the Co-Defendants does not obviate this problem and does not prevent it from impacting the Debtor. As a result, any argument that denying the Motion for Stay would impose any burden on the Debtor lacks merit: the litigation

1845083.2      12

at issue will have to go forward and be funded regardless of forum or any specific method of resolution.

## IV. CONCLUSION

"The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." See Matter of Winshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir. 1985). However, if a business is not viable, then "the Chapter 11 effort has lost its *raison d'etre*." See id.

The Debtor filed this Chapter 11 case to avoid the continuing adjudication of the Walker Action and the Krawczyk Action, among other litigation. However, Debtor has no active operations and no ability to propose a confirmable Chapter 11 plan. The Motion for Stay comprises nothing more than an additional attempt to slow the completion of the pending litigation.

There is no reason to give the Co-Defendants the protection of the stay. As a result, reason dictates denial of the Motion for Stay.

Respectfully Submitted,

Date: January 3, 2017

By: /s/ Bonnie L. Clair_____
BONNIE L. CLAIR (#41696MO)
SUMMERS COMPTON WELLS LLC
8909 Ladue Road
St. Louis, MO 63124
(314) 991-4999/(314) 991-2413 Fax
blcattymo@summerscomptonwells.com
    (ECF filings only)
bclair@summerscomptonwells.com
    (Correspondence)

with

        Richard Mithoff
        Janie L. Jordan
        Mithoff Law
        One Allen Center-Penthouse
        500 Dallas Street
        Houston, TX 77002
        (713) 654-1122/(713) 739-8085 Fax
        RMithoff@mithofflaw.com
        JJordan@mithofflaw.com

        and

        Judith Sadler
        Holmes Diggs Eames & Sadler
        5300 Memorial Drive, Suite 900
        Houston, TX 77007
        (713) 802-1777/(713) 802-1779 Fax
        JSadler@holmesdiggs.com

## CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing was served on January 3, 2017 via electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Eastern District of Missouri to the parties requesting service by electronic filing. I hereby also certify that a copy of the foregoing was served on January 3, 2017 via United States Mail, first class postage prepaid, on the date of the electronic filing of this document to those individuals and entities not requesting service by electronic filing. The individuals and entities being served electronically or by mail are:

| | |
|---|---|
| United States Department of Justice<br>U.S. Trustee's Office<br>111 S. 10th Street, Ste. 6353<br>St. Louis, MO 63102 | Robert E. Eggmann<br>Thomas H. Riske<br>Christopher J. Lawhorn<br>Carmody MacDonald P.C.<br>120 South Central Avenue<br>Suite 1800<br>Clayton, MO 63105 |
| E. Rebecca Case<br>Stone Leyton & Gershman<br>7733 Forsyth Blvd, Suite 500<br>St. Louis, MO 63105 | Steven A. Ginther<br>Missouri Department of Revenue<br>301 W. High Street, Room 670<br>PO Box 475<br>Jefferson City, MO 65105-0475 |
| David L. Going<br>Armstrong Teasdale LLP<br>7700 Forsyth Blvd, Suite 1800<br>St. Louis, MO 63105 | |

        /s/ Christina L. Hauck

1845083.2         14